Take all the facts and evidence into consideration. Specifically, what do you think Judge Torres got wrong? There's been an ongoing dispute between myself and Port Authority since 2017. They're saying it's not a job-related injury. They put me on sick leave for about five years. And nothing had been resolved. Just briefly, I mean, not briefly, last year, New York State local retirement system did honor me a 30% disability rate, which is not the same as what I was making when I was getting paid as a police officer. So your disability benefits have come through, but it's 30%, you said? It's 33%, yes. 38? 33. 33%. Which I feel like it's below what I was making regularly. The last year I worked, I made $187,000. And then going down to when they put me on sick leave, when I got to 2019, I had no pay. I was at no pay until 2023, until the pension actually kicked in. And Port Authority is saying that it's not a job-related, which it was job-related because supervisors were involved. So you said your pay was how much? Hmm? You said your pay was how much? $187,000. And then in 2019, I went to zero pay, and I couldn't get a job because Dr. Francis stated to me that if I was to get a job, I would be fired because I was still getting medical benefits. So that's my argument that I feel like I should have been paid once everything got resolved, but which really didn't. And in the process, I almost lost my house. I had to file for bankruptcy because I couldn't pay my bills anymore. And it was very embarrassing. I mean, I think we understand all that. I guess the real question is what it is that Judge Torres did wrong. So what errors did she make? I feel like she didn't take all the facts and evidence into play because it was still like an ongoing case. There was never a time stamp where anything stopped. Because I was seeing Dr. Francis from January of 2018 to all the way into March 4, 2020, when I was told not to see her anymore because the law department stated that they didn't want me to keep on seeing her for my medical assessments. So I don't understand why the law department would get involved with something that's medical. Any other questions? Okay, so you've reserved a minute for rebuttal. Mr. Rosado will now hear from Ms. Lee on behalf of the Court Authority. Good morning, Your Honors. May it please the Court. My name is Megan Lee. I'm with the Court Authority Law Department. The decision dismissing Mr. Rosado's ADA claim was correctly decided for three reasons. First, Mr. Rosado did not assert a violation of his rights under the ADA when he filed a charge of discrimination with the EEOC in September 2018, at which time he was represented by an attorney, and he was represented by an attorney throughout this case until this appeal. And even if you analyze the failure to accommodate claim under the claim that he did raise with the EEOC, which was discrimination based on his ethnicity and national origin, he could not make out a prima facie case because he failed to prove that he was qualified for the position based on his own doctor's report. And he also couldn't show that the Port Authority's actions in response to that report were based on his race and ethnicity, as opposed to his ability to do his job. Finally, Mr. Rosado did not show that the Port Authority's actions in denying him an accommodation to work desk duty was based on a policy or practice based on race, so he did not make out a Section 1981 claim. And that's what the court below held, and we submit that that was properly decided. With respect to his ADA claim, Mr. Rosado's doctor opined in July 2018 that he was permanently disabled from working as a police officer. Yet when Mr. Rosado's attorney filed his charge of discrimination with the EEOC two months later, he did not list the ADA as a basis for discrimination against Mr. Rosado. And during the course of discovery, Mr. Rosado did not link his discrimination or retaliation claim to his disability or medical conditions, as opposed to his claims of race and ethnicity discrimination. And those claims were not reasonably related to his race and ethnicity claims. The court, though, went ahead and analyzed his reasonable accommodation claim under the Title VII claim that he had properly asserted. And in order to prevail on his Title VII claim, he had to show that he was qualified for the position of police officer, and the court authority took adverse action against him under circumstances giving rise to an inference of discrimination or retaliation. The court found that Mr. Rosado could not show that he was qualified to work as a police officer based on his own doctor's extensive evaluation of him, which was prepared at the behest of his attorney. In fact, his doctor found that he was medically and psychiatrically unqualified to be a police officer. The court authority simply accepted that diagnosis and offered Mr. Rosado the opportunity to engage in an interactive process, to either find a reasonable accommodation or another position, but Mr. Rosado opted not to participate in that process and instead pursued disability retirement, which we're learning today he did ultimately receive. Mr. Rosado also could not show that the court authority's actions were motivated by discrimination and or retaliation based on his ethnicity or national origin, as opposed to his doctor's opinion. Could I interrupt for just one second? Sure. I'm just looking at the district court opinion, and I've forgotten about Mr. Espinoza being part of this case below. Where did Mr. Espinoza end up? Mr. Espinoza's claims were also dismissed, and he did not appeal the decision. Oh, thank you. Okay. And under the 1981 claim, which Judge Torres also analyzed his claim under 1981, and found that Mr. Rosado had to show that the court authority had a policy or practice of denying similarly situated employees a reasonable accommodation due to their race. In this case, there was no showing of treatment of any other employees. It was just how Mr. Rosado was treated, so there was no evidence of any pattern or practice, or that similarly situated officers were treated differently. And in fact, there was a practice and a policy at the court authority for accommodating people under this circumstance, but Mr. Rosado failed to take advantage of it for reasons known only to him. And finally, the individuals who made the determination with respect to Mr. Rosado were not policy makers at the court authority. That's it. Thank you. So Mr. Rosado, you have a reserved minute for rebuttal. Yes. She's right in one way and she's wrong in the other. There is no policy on how they carry people out when people go out on disability or when they put you out sick. This court authority doesn't have no written policy at all. And I did believe that Dr. Francis was a policy maker because she made me believe that if I give her a letter stating that I can come back to work, she'll put me back to work. So she had me believing for almost three years that she was a policy maker, that she was in charge of the psychological unit of the court authority, which now they're saying that she's not, that she's not a policy maker. And when does a lieutenant have the right to say, oh, he can't get death duty? Why not? There's other places I could have been put on that I wasn't accommodated with because they decided not to put me at death duty because they wanted me to hurt financially. So that's why they didn't offer me anything. And that's why I'm here, and it's frustrating. Even six years later, I'm still suffering from this stuff. Mentally, now I'm taking psych medication. I can barely sleep. But politically, I don't care because they have all the money in the world. I don't. Okay. Well, thank you. We will reserve decision on this case as well.